## NORTH DAYTON SAVING & LOAN ASS'N. v UNITED STATES CASUALTY COMPANY

Ohio Appeals, 2nd Dist, Montgomery Co

No 1656. Decided Jan 28, 1941

Allen C. McDonald, Dayton, for plaintiff-appellant.

Clifford R. Curtner, Dayton, for defendant-appellee.

## OPINION

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal from the judgment of the Court of Common Pleas of Montgomery County, Ohio. The cause was tried to Court and jury on the amended petition of plaintiff, the amended answer of defendant, the reply of plaintiff, plaintiff's answer to interrogatories, and evidence, and at the close of plaintiff's case the trial court, on motion, directed the jury to return a verdict in favor of the defendant. Thereafter a motion for a new trial was duly filed, overruled, and judgment entered on the verdict dismissing plaintiff's action.

This is the final order from which error is prosecuted in this court.

Plaintiff-appellant's assignments of error are set out in four separately numbered specifications, but all may be summarized under one general heading, that the action of the court on the state of the record was contrary to law. The following brief statement of facts will render understandable the nature of the controversy and the manner in which the action arose.

The plaintiff association was a corporation, duly organized and existing under the laws of the State of Ohio,

for the purpose of conducting a general building and loan business with its office and place of business located in the outlying district of the City of Dayton. The association was very small.

Mathew K. Mackevich was the treasurer of the association, managing head and only employee for a great many years. The salary paid to him was only a few hundred dollars a year. Under arrangements with the Board of Directors he was permitted to conduct his real estate and insurance business in the same building. Commencing July 14, 1932, the defendant company wrote and maintained a scheduled bond on certain officers and directors of the association, including Mathew K. Mackevich. as treasurer thereof.

The amount of the scheduled bond as it related to the treasurer, Mr. Mackevich, was in the sum of $5,000. The bond was continued from year to year and was operative at all times referred to. Said bond specifically purported to protect said association against pecuniary loss, "by any act or acts of fraud, dishonesty, forgery, theft, embezzlment, or wilful misapplication directly or through connivance with others on the part of any employee named in the schedule attached to and hereby made a part of this bond" etc. In addition, there was typewritten as a part of the bond the following:

"It is hereby understood and agreed that this bond covers in accordance with provisions of §9670 GC."

During the summer of 1936 Mr. Mackevich was taken seriously sick and after an extended illness he died on June 30, 1936. On or about June 17, 1936, the Board of Directors of the association, upon learning of the sickness of Mr. Mackevich, employed Miss Lila M. Sieber, an experienced office worker, to take charge of the office and perform the clerical work therein required. When Miss Sieber appeared at the office for the purpose of taking charge, she found that Mr. Mackevich had placed his daughter in the office and in charge of the business. Within a short time Miss Sieber discovered some apparent discrepancies and very shortly thereafter the defendant company was notified by letter as to the possible discrepancies.

The plaintiff association first caused two letters to be sent to the Cleveland office of the defendant company, and thereafter a third letter was sent to the home office of the company in New York. These letters were very general in their character, giving little or any detail other than apparent discrepancies which might or might not be fully explained by further investigations. Similar information was given to the Superintendent of Building & Loans, and upon the advice of the latter a Dayton firm of certified accountants were employed to make a complete detailed examination and report. Thereafter, on September 21, 1936, the firm of accountants made their report on their completed investigation, showing a net deficiency in cash of $1006.30.

The report set out in detail the source of this shortage. It was covered by some twenty-six items made up of money paid in on passbook accounts and on rents.

None of these stated rents from property owned by the association or money paid in on the listed passbooks appeared in the ledger accounts for the respective parties paying in the money or in the cash book of the association. All of the amounts, with the exception of two, were traced as having been paid to Mr. Mackevich in the following manner:

The individual passbooks contained the entries in the handwriting of Mr. Mackevich. and the rents paid in were represented by receipts in the handwriting and signed by Mr. Mackevich. In two instances the money was shown to have been paid in on different dates to two different employees of Mr. Mackevich, and each testified that they receipted the money, giving receipt therefor, and thereafter turned the amount over to Mr. Makevich.

Sometime in October, following the report of the firm of certified accountants, proof of loss was made out and together with a copy of the accountants' report sent to the local counsel of the defendant company, as per previous information by letter, that the matter had been referred to their Dayton counsel. The defendant company having failed to pay the claim within the time prescribed under the policy the plaintiff association commenced its action on March 4, 1937. The amended petition sets out all the essential elements including conditions precedent prescribed under the policy to authorize recovery, unless made an issue under the answer.

The amended answer puts in issue all the allegations relating to the claimed loss, and while admitting notice of proof of loss, etc., as required under the policy, denied that this condition precedent was complied with within the time provided for in the policy.

Other defenses were averred in the answer, affirmative in nature, but since the verdict was directed at the close of plaintiff's case it becomes unnecessary to mention these affirmative defenses.

Defendant's motion for a directed verdict was all inclusive, encompassing the claim that the plaintiff failed to establish by any evidence any dereliction of Mr. Makevich within the terms of his bond, and, further, that the condition precedent of the policy relative to notice and proof of loss had not been made within the time prescribed. The trial court in sustaining the motion for a directed verdict first gave detailed reasons in chambers to counsel for his contemplated action, which is transcribed in the record, and later made similar explanation to the jury in directing a verdict, and his reasons for so doing, and this also is transcribed in the record. The gist of the Court's reasoning as discernible from the record was in effect that the evidence failed to show that Mr. Mackevich took any of the funds of the association, and, further, that there was an opportunity for other persons to have taken the funds.

In the trial court's directions to the jury he made no mention as to the claim of defendant that plaintiff had failed to prove performance of certain conditions precedent.

We are unable to follow the reasoning of the trial Court. To our minds the fact of a cash shortage was very positive, and the various amounts making up the total were traced to the possession of Mr. Makevich. We do not see how evidence could be stronger than that Mr. Makevich received the money when written evidence was presented, that he had either receipted for the amounts when rents were paid in, or had made entries in his own handwriting in the passbooks of depositors when deposits were made. When he receipted for money or made entries in passbooks representing receipt of money, no other inference can arise than that he in fact received it.

When it is further shown Mr. Mackevich failed to give credits to these individuals paying in money and failed to enter the amounts on the cash book of the association, no further proof is required. If Mr. Mackevich were alive and defending under such a record, he would be held liable, unless he could make satisfactory explanation as to what became of the money traceable to his hands.

The defendant bonding company stands in no different position on this question. Had Mr. Mackevich made the proper entries in the books of the association, then there might have been presented a somewhat different question, but even then under the terms of the bond, considering §9670 GC, as a part of the bond, there still would have been a jury question as to whether or not Mr. Mackevich had faithfully performed his duty and had safely kept and made out proper application of all monies and property coming into his hands.

It must be kept in mind that according to the report of the certified accountants, introduced in evidence, the

net deficiencies in cash is identical in amount with the sum total of the various items received by Mr. Makevich and not included in the books of the association.

We have no difficulty in arriving at the conclusion that we are unable to follow the trial Court in his reasoning for instructing a verdict for the de-defendant, but there still remains the question as to whether or not the action of the court was proper upon other grounds. The law is well recognized that if the action of the ▬▬▬ court was right in instructing a verdict it must be affirmed even though we might not agree with the reasoning. This brings us to the question as to the issue raised under the pleadings as to compliance with conditions precedent as prescribed under the policy. One of the provisions of the policy as set out in defendant's amended answer reads as follows:

"That claim, if any, be submitted by the employer in writing showing the items and the dates of the losses and be delivered to the surety at its home office within three months after such discovery," etc.

Under the second defense of the amended answer defendants aver that plaintiff discovered said alleged discrepancies on or about June 17, 1936, and notified said defendants at its home office of such facts on or about July 10, 1936, and supplied defendants with its affidavit and proof of loss on or about October 22, 1936. The first notices sent by, or on behalf of the association, as to any discrepancies were by letter, signed by Allen C. McDonald, who was secretary and attorney for the plaintiff company, and copies of some of these letters appear in the record by way of exhibits. The first in chronological order is Plaintiff's Exhibit No. 31, dated July 14th, and the first paragraph refers to a letter written by Mr. McDonald a few days previously. In this letter of July 14th reference is made to apparent discrepancies which at that time amounted to

$611.10. The letter further stated that:

"Perhaps these for the most part may be adjusted when we get in the passbooks of our patrons, but inasmuch as there are seeming shortages of the amount named, we have thought it best to advise you. We have not had any letter from you in reply to the one I wrote you a few days ago. We do not know what other course can be pursued except to continue our investigations and go over all of the passbooks as early as they can be obtained and gotten into the office. When we have done this, we shall be glad to report to you further."

This letter was addressed to the company at its Cleveland office.

Again there appears in Plaintiff's Exhibit No. 33, being a copy of a letter allegedly written by Mr. McDonald on August 5th to the defendant company at its office in New York City, the first paragraph of which is as follows:

"On July 8, 1936, I wrote a letter as secretary and attorney for the North Dayton Savings & Loan Association, of 119 Valley St., Dayton, Ohio, to your company addressed to the Williamson Building at Cleveland, Ohio. In this letter I stated there were some apparent differences or discrepancies on the books and accounts of the North Dayton Association as kept by M. C. Mackevich, who was a director and also treasurer of the company. Mr. Mackevich died on June 30, 1936, and in preparing our semi-annual report for the six months which ended with June 30th, 1936, we found some seeming discrepancies which we expected to investigate fully, and of which we desire to give notice at once. This we did to the Cleveland office, but are now verifying this notice to your main office.

Subsequently the matter was referred by your company representatives to Mr. Clifford R. Curtner, attorney, with offices in the Union Trust Building, Dayton, for investigation. I may say that we are still going over the Association books, having employed the accountant

firm of Hubbard, Freeman & Co., of Dayton, to make a detailed audit for us. When this audit has been finished if it develops that a shortage existed on the part of Mr. Makevich, we shall at once present a claim for the amount, in the usual manner."

Plaintiff's Exhibit No. 34, being on the letterhead of the United States Casualty Company, Williamson Building, Cleveland, and addressed to Mr. Allen McDonald acknowledging receipt of a letter of July 14, 1936, advised: "We have referred this claim to Mr. C. R. Curtner, Dayton, Ohio, for whatever attention it requires."

Plaintiff's Exhibit No. 32, being an original letter on the letterhead of the United States Casualty Company, Baltimore, Maryland, acknowledges receipt of Mr. McDonald's letter under date of August 5th directed to the New York office. The letter further stated: "This matter has had our attention with the usual reservation of rights. A copy of your letter is being forwarded to Mr. Clifford R. Curtner, our representative in your city."

Plaintiff's Exhibit No. 35 is an original letter on the letterhead of Mr. Clifford R. Curtner, and signed by the latter, addressed to Mr. Allen C. McDonald and in substance states that he is enclosing proof of loss in line with the claim of the North Dayton Savings & Loan Company on the scheduled form bond. Also, the following: "As soon as the audit of the company is completed, I trust you will call me."

It is the claim of the plaintiff that the extent of the loss was not ascertained until on or about September 21, 1936, when the examination and report of the certified accountants was made.

Defendant's Exhibit "B" is a photostatic copy of the affidavit and proof of loss under the bond and purports to have been verified by the president of the defendant company on October 10, 1936 The proof of loss and affidavit, executed October 10, 1936, on the blank form presented to Mr. McDonald as the representative of the plaintiff company,

was delivered some time before October 29, 1936, the exact date being in dispute. The detailed statement of the claim was presented through the report of the certified accountants. There is further testimony relative to this present question presented through the Bill of Exceptions, which we have examined, but do not think it necessary to make further comment thereon.

Suffice it to say that the ascertainment of the amount of claimed discrepancies, if any, was not ascertained until September 21, 1936, and there is evidence warranting the conclusion that the proof of claim and affidavit was filed within the time prescribed under the policy.

It, therefore, follows that the finding and judgment of the trial court must be set aside and the cause remanded for new trial.

Costs of this proceeding in our court will be adjudged against the appellees.

Entry may be drawn accordingly.

HORNBECK, PJ. & GEIGER, J., concur.

## APPLICATION FOR REHEARING

No 1656. Decided Feb 24, 1941

BY THE COURT:

The above entitled cause is now being determined on defendant-appellee's application for rehearing.

This application apparently is based on the fact that in our original opinion we went beyond the claimed errors set out in appellant's assignment and discussed at length the question of conditions precedent necessarily involved in plaintiff's cause of action.

Ordinarily our observations on review are limited to the errors complained of, but not infrequently, as in the instant case, counsel for appellee raise the question that the judgment is correct even if it should be determined that the court erred in the particulars set out in the assignments.

This is exactly what happened in the instant case.

Counsel urge not only that the action of the trial court in directing a verdict was warranted under the reasoning given, but in addition was necessarily correct on the further question that plaintiff had not presented evidence showing compliance of certain essential conditions precedent.

When we arrived at the conclusion that the trial court was wrong in his reasoning for directing a verdict, it then became necessary to inquire whether or not the action of the court was correct on any other reasoning disclosed through the record, and necessarily required a determination of the probative force of all evidence on this question.

There is nothing new about this procedure; in fact, we always follow it.

The reason for our commenting on this question of conditions precedent was due to the fact that it was not as well defined as it should have been.

In fact, I think we would be warranted in scolding counsel for appellant a little in not having his record so cleancut on the performance of conditions precedent as would have eliminated all question.

By this we mean that an experienced counsel should know the importance of performance of conditions precedent, and when he has a claim of this character should carefully read his policy and perform every condition 100 per cent and to the letter.

Such care in the start will very frequently avoid law suits thereafter. We are frank to say that the saving of plaintiff's case on this question of performance of conditions precedent will be due more to good fortune than well formulated design.

The first two letters sent by the attorney to the Cleveland office possibly were not intended in any sense as an attempted notice under the policy. They did nothing more than advise that there were apparent discrepancies. The letter of August written to the New York office is presumably the one intended as a compliance. We so deduce from the fact that the letter so states. The subsequent proof of loss and affidavit with report of account comes within the three months' period designated on the policy.

The application for rehearing will be denied.

GEIGER, PJ., BARNES & HORNBECK, JJ., concur.